## UNITED STATES DISTRICT COURT
## DISTRICT OF COUMBIA
### Civil Division

| | |
|---|---|
| **Matthew Rogers**<br>**2803 Captains Cove Ct**<br>**Edgewater, MD 21040**<br><br>      **Plaintiff**<br><br>**v.**<br><br>**Smithsonian Institution**<br>**Capital Gallery, Suite 4100**<br>**600 Maryland Ave, S.W. MRC 504**<br>**Washington DC 20013-7012**<br><br>      **And**<br><br>**David J Skorton,**<br>**Secretary of the Smithsonian Institute**<br>**Capital Gallery, Suite 4100**<br>**600 Maryland Ave, S.W. MRC 504**<br>**Washington DC 20013-7012**<br><br>      **Defendant** | **CASE:  1:17-cv-759** |

## COMPLAINT

1. Plaintiff Matthew Rogers ("Plaintiff"), by and through undersigned counsel, hereby submits this complaint against Defendant the Smithsonian Institution ("Defendant") located at SI Building in Washington, D.C. to recover damages for violation of Title VII of the Civil Rights Act of 1964, Fair Labor Standards Act, Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973 and Family and Medical Leave Act of 1993 ("FMLA")

## JURISDICTION AND VENUE

2. Plaintiff, Mr. Rogers worked for the Smithsonian Institution, the Defendant headquarters is within the District of Columbia at the SI Building located in Washington, D.C.

3. Defendant is located in Washington, D.C.

4. Defendant upon reasonable belief is an organization with assets located in Washington, D.C.

5. Defendant's principle place of business is in Washington, D.C.

6. Defendant has minimum contacts with Washington, D.C.

7. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, American with Disabilities Act, and the Fair Labor Standards Act.

8. This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, The Family Medical Leave Act and The Rehabilitation Act, 29 U.S.C. § 701 et seq.

9. Venue is proper in this judicial district under 42 U.S.C. Section 2000e-5(f)(3) and 5 U.S.C. § 7703(b)(2); as Plaintiff was employed by the Defendant in the District of Columbia, plaintiff's employment records are in this judicial district, and decisions adverse to Plaintiff's employment that are the subject of this civil action were made in this judicial district.

## GENERAL ALLEGATIONS

10. The Plaintiff during the time frame of the allegations listed below worked for the Smithsonian Institution during the timeframe that the Plaintiff's claims occurred.

11. The Plaintiff worked as a Security Officer at Defendant's warehouse located at 3400 Pennsy Dr, Hyattsville, MD 20785.

12. The Defendant is Plaintiff's employer.

13. The Plaintiff was discriminated against and retaliated against based on defendant's race and ethnicity.

14. Plaintiff initially contacted the Office of Equal Employment and Minority Affairs on June 20, 2017.

15. A final sgency decision was rendered June 21, 2018.

## RACE DISCRIMINATION

16. Plaintiff is an African-American Male.

17. Plaintiff's Supervisor Sergeant Dazila ("Supervisor" or "Sgt. Dazila") is Hispanic.

18. The Plaintiff's Supervisor treats Hispanic employees within the Smithsonian Institution differently than African American employees.

19. The Plaintiff's Supervisor treats the Plaintiff differently than Hispanic employee within the Smithsonian Institution based on his race.

20. The Plaintiff's Supervisor discriminates against the Plaintiff because the Plaintiff is an African American.

21. In all work and social manners Plaintiff's Supervisor treats Hispanic employees at the Smithsonian Institution better, kinder, warmer, and more favorably.

22. The Plaintiff's Supervisor treats Hispanic employees at the Smithsonian Institution like family.

23. The Assistant Security Supervisor is Hispanic.

24. The Plaintiff's Supervisor treats the Plaintiff like an outcast or as a second-class employee.

25. In all work and social manners, the Plaintiff's Supervisor treats Hispanic employees differently than how the Plaintiff's Supervisor treats the Plaintiff.

## FMLA VIOLATIONS AND DISABILITY DISCRIMINATION

26. To the best of Plaintiff's knowledge, Supervisor has not received training on addressing employees that request Family Medical Leave or are on FMLA.

27. To the best of Plaintiff's knowledge, The Assistant Security Supervisor has not received training on how to supervise a person with a disability.

28. The Plaintiff is recognized by the Defendant as suffering from a certified disability.

29. The Plaintiff is a part of the Defendant's reasonable accommodation program for persons who suffer from a disability.

30. The Plaintiff's Supervisor at all times has been aware of and has been provided notice that the Plaintiff suffers from a disability. (See Exhibit 1)

31. The Plaintiff on or around August through October 2015 emailed his Supervisor to inform him that he was suffering from a disability and as such has been approved to exercise his legal right to use FMLA leave. (See Exhibit 2)

32. At the time of the request, Plaintiff was eligible for FMLA pursuant to the policies of the Defendant and under federal law.

33. The Plaintiff's Supervisor once learning about the Plaintiff's disability threatened the Plaintiff five times or more that if the Plaintiff exercised his legal right to use FMLA leave that he would be "disciplined".

34. Plaintiff's request for intermittent FMLA was denied by Defendant.

35. Defendant's failure to provide Plaintiff with medical leave to address his certified disability while in the Defendant's reasonable accommodation program was a violation of the American With Disabilities Act as well as the Rehabilitation Act of 1973.

4

36. At no time has a reason been providing by the Defendant as to why his FMLA request was denied.

37. In June of 2016, The Plaintiff requested FMLA leave to take care of Plaintiff's wife that suffers from cancer who needed home assistance during her period of treatment. (See Exhibit 3)

38. At the time of the request, Plaintiff was eligible for FMLA pursuant to the policies of the Defendant and under federal law.

39. Again, Defendant Supervisor Davila denied Plaintiff his legal right for leave under FMLA and used his FMLA days against him.

40. Defendant did not provide Plaintiff a reason for the denial.

41. Due to Davila's actions, Plaintiff was required to continue working without having proper use of his leave.

42. After Plaintiff's request for FMLA was denied, Plaintiff's wife had a medical episode while at home.

43. Plaintiff's wife's medical episode was one that was life threatening.

44. Plaintiff was able to arrive in time to assist his wife to receive emergency treatment only because he was returning to pick of a personal item.

**HOSTILE WORK ENVIRONMENT**

45. Defendant has systemically denied African-American employees their legal FMLA rights.

46.

47. Plaintiff is aware that the following individuals are African Americans and have had his or her FMLA legal rights burdened by the Defendant: (1) Janice Hunter; (2) Joanne Evans; and (3) and Terrance Page.

48. Plaintiff is not aware of any other employees that are similarly situated to him who have had their FMLA requests denied or burden that were of a different race.

49. The only Smithsonian Institution employees similarly situated to the Defendant that have had his or her FMLA legal rights burdened suffer from a disability.

50. The Defendant as it relates to both requests for FMLA leave was never explained his legal rights as it relates to exercising the legal right to request and use FMLA leave.

51. The Plaintiff has requested and taken FMLA leave to take care of Plaintiff's wife that suffers from cancer.

## RETALIATION

52. The Plaintiff filed an Equal Employment Opportunity ("EEO") complaint on or around August 2016 concerning the FMLA violations and failure to properly accommodate.

53. Soon after the filing of his Complaint, Plaintiff was wrongly accused of being Absent Without Official Leave ("AWOL") at or around August 2016. (Exhibit 3)

54. The Plaintiff at the time was out of the office because: (1) the Plaintiff suffered from a health related issue; and (2) was using leave.

55. The Plaintiff's Supervisor was aware of and had notice that the Plaintiff was using leave as it relates to the wrongful AWOL allegation

56. The Plaintiff was not contacted or notified that the Defendant marked the Plaintiff as AWOL.

57. The Plaintiff only learned that the Defendant marked the Plaintiff as AWOL when the Plaintiff reviewed the Plaintiff's timecard. . (See Exhibit 4 and 5)

58. While the Defendant removed the wrongful AWOL timecard designation, the Defendant marked the Plaintiff AWOL as a discriminatory and retaliatory action. (See Exhibit 6)

59. The Defendant did not follow the customary and written AWOL policies and procedures when it wrongfully marked the Defendant as AWOL.

60. The only other employee similarly situated as the Defendant that have been wrongfully targeted by the Defendant as AWOL is Robert Youngblood.

61. Robert Youngblood is an African American.

62. Robert Youngblood was not AWOL, but was out of the office on leave taking care of his mother who was suffering from health-related effects.

63. The Defendant systematically targets African Americans and uses AWOL designations as a way to burden and discriminate against African American worker rights in the work place.

64. But for the Plaintiff being an African American and filing his EEO Complaint, the Plaintiff would not have been wrongfully targeted as AWOL.

65. The designation of AWOL accompanies potential significant disciplinary actions.

66. When the Plaintiff inquired with those outside of his direct supervisory chain of command as to why he was marked as AWOL, the Plaintiff was threatened by his Supervisor that he would be "disciplined" if he went continued his inquires.


**LEAVE RETALIATION**

67. The Plaintiff filed for annual leave at or around October 21, 2016, to take care of Plaintiff's wife that suffers from cancer.

68. The Plaintiff received an email from the Defendant that stated Plaintiff's leave was denied at or around October 21, 2016.

69. The Smithsonian Institution timekeeping system ("WebTA") reflected on or around October 21, 2016, that the Plaintiff's at or around October 21, 2016, leave was denied.

70. Ms. Monnier of the Defendant sent the Plaintiff at or around October 21, 2016, an email that stated that Plaintiff's at or around October 21, 2016, leave request was denied.

71. Ms. Monnier told the Plaintiff at or around October 21, 2016, that the Plaintiff's leave request was denied because there were four staff members out of the office.

72. In the past Plaintiff's work unit has had four staff members out of the office and leave was allowed.

73. The day after Plaintiff requested leave at or around October 21, 2016, there were four staff members out of office.

74. The Defendant has not followed annual leave policies and procedures as it relates to the Plaintiff.

75. The Defendant has spontaneously created leave requirements outside of the Defendant's customary and written leave policies and procedure.

76. The Plaintiff's at or around October 21, 2016, leave request was denied because Plaintiff in retaliation of him asserting his legal right and him being African-American.

### RETALIATION BASED ON EVALUATION

77. Plaintiff was given a substantially lower 2016 annual evaluation because the Plaintiff is: (1) an African American; (2) suffers from a disability; (3) had previously exercised a legal right to include but not limited to FMLA leave and (4) in retaliation of Plaintiff exerting his legal rights.

78. There are no negative written comments in Plaintiff's 2016 annual evaluation.

79. There are no negative written comments in Plaintiff's 2016 mid-year evaluation.

80. As reflected by the zero negative comments in the Plaintiff's 2016 evaluations, the Plaintiff has at all times full-filled the Plaintiff's assigned duties on a daily basis.

81. Plaintiff's Supervisor told the Plaintiff that he received a lower 2016 annual evaluation because the Plaintiff could not participate in rotational duties.

82. The Plaintiff could not participate in rotational duties because the Plaintiff suffers from a disability.

83. Plaintiff's Supervisors use of his disability as a reason to give him a lower evaluation itself is discrimination under the American with Disabilities Act.

84. But for the discriminatory actions by Plaintiff's Supervisor based on a disability and race, the Plaintiff would not have received the substantially lower 2016 annual evaluation.

85. The Defendant bases annual and merit based bonuses on employee annual evaluation ratings.

86. The Defendant substantially considers annual evaluation ratings in the Defendant's promotion and hiring decisions.

87. Prior to 2016 the Plaintiff had received an Outstanding annual evaluation for seven consecutive years. (See Exhibit 7, 8 , 9, 10, 11 and 12 )

88. The Plaintiff was given a substantially lower 2016 annual evaluation because the Plaintiff is: (1) an African American; (2) suffers from a disability; and (3) had previously exercised a legal right to include but not limited to FMLA leave.

89. Wherefore Plaintiff has been discriminated against by Defendant, retaliated against and had his legal rights infringed upon and now requests damages.


**COUNT I**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

90. Plaintiff incorporates and restates each of the above paragraphs as if fully set herein.

91. Plaintiff is in a protected class as set forth under Title VII of the 1964.

92. Defendant infringed upon Plaintiff's rights by denying him leave he requested in June of 2016 due to his race.

93. Defendant's denial of Plaintiff's FMLA due to his race are a violation of Title VII.

94. Due to Defendant's denial, Plaintiff's wife suffered a life threatening medical episode that he was not readily available to render assistance to.

95. Plaintiff has suffered damages, therefore Plaintiff seeks $107,000 in mental anguish and pain and suffering; liquidated damages; any and all medical costs incurred; court costs and interests; attorneys fees; and $215,000 in punitive damages

## COUNT II
## HOSTILE WORK ENVIRONMENT BASED ON RACE

96. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

97. Plaintiff is African-American and under a protected class as defined by Title VII.

98. Defendant created a hostile work environment in which African-American employees are threatened if they attempt to use any leave.

99. Defendant created a hostile work environment in which African-American employees FMLA request are denied or burdened.

100.     Defendant's hostile environment is a violation of Title VII.

101.     Therefore, Plaintiff seeks liquidated damages, any and all medical costs incurred; court costs and interests; attorney's fees; punitive damages in the amount $125,000 for the hostile work environment created by Defendant.

## COUNT III
## VIOLATION OF ADAAA - 2016

102.     Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

103.     Plaintiff has a certified disability under the law.

104.     Plaintiff is enrolled in Defendant's reasonable accommodation program.

105.     Plaintiff attempted to take FMLA in order to accommodate for his disability.

106.     Defendant denied Plaintiff's request without a showing of how his request was unreasonable under the law.

107.     Defendant's actions are a violation of the ADAAA.

108.     Therefore Plaintiff seeks compensatory damages; liquidated damages; any and all medical costs incurred; court costs and interests, attorney's fees; and punitive damages in the amount of $215,000.

## COUNT IV
## VIOLATION OF ADAAA - EVALUATION

109.     Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

110.     Plaintiff has a certified disability under the law.

111.     Plaintiff is enrolled in Defendant's reasonable accommodation program.

112.     Plaintiff received a poor evaluation from his Supervisor in 2016.

113.     Plaintiff had no negative comments on his evaluation.

114.     Plaintiff's Supervisor claimed that Plaintiff's low evaluation was due to him not participating in something that was an accommodation under the ADAAA.

115.     Defendant's use of an accommodated activity as a reason for a negative evaluation is a violation of the ADAAA.

116.     Therefore Plaintiff seeks compensatory damages; liquidated damages; any and all medical costs incurred; court costs and interests, attorney's fees; suffered and punitive damages in the amount of $215,000.

## COUNT V
## VIOLATION OF REHABILITATION ACT OF 1973 - 2016

117.     Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

118.     Plaintiff has a certified disability under the Rehabilitation Act of 1973.

119.      Plaintiff is an employee in the federal government.

120.      Plaintiff is enrolled in Defendant's reasonable accommodation program.

121.      Plaintiff attempted to take FMLA in order to accommodate for his disability.

122.      Defendant denied Plaintiff's request without a showing of how his request was
unreasonable under the law.

123.      Defendant's actions are a violation of the Sec 505 of the Rehabilitation Act of 1973.

124.      Therefore Plaintiff seeks compensatory damages; liquidated damages; any and all
medical costs incurred; court costs and interests, attorney's fees; and punitive damages in the
amount of $215,000.

## COUNT VI
## VIOLATION OF ADAAA - EVALUATION

125.      Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

126.      Plaintiff has a certified disability under the law.

127.      Plaintiff is employed by the federal government

128.      Plaintiff is enrolled in Defendant's reasonable accommodation program.

129.      Plaintiff received a poor evaluation from his Supervisor in 2016.

130.      Plaintiff had no negative comments on his evaluation.

131.      Plaintiff's Supervisor claimed that Plaintiff's low evaluation was due to him not
participating in something that was an accommodation under the Defendant's policies.

132.      Defendant's use of an accommodated activity as a reason for a negative evaluation is a
violation of Sec 505 of the Rehabilitation Act of 1973.

133.      Therefore Plaintiff seeks compensatory damages; liquidated damages; any and all
medical costs incurred; court costs and interests, attorney's fees; suffered and punitive damages
in the amount of $215,000.

## COUNT VII
## VIOLATION OF FAMILY MEDICAL LEAVE ACT

134.    Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

135.    Plaintiff was eligible to receive Family Medical Leave in June of 2016.

136.    Plaintiff requested FMLA to take care of his wife that was suffering from Cancer.

137.    Defendant denied Plaintiff's request in violation of Plaintiff's rights and Defendant's own policy.

138.    Defendant's actions were a violation of FMLA.

139.    Therefore Plaintiff requests liquidated damages, any and all medical costs incurred, court costs and interests, attorney's fees and punitive damages in the amount of $150,000.

## COUNT III
## RETALIATION

140.    Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

141.    Plaintiff engaged in protective activity by filing a EEO complaint against the Defendant and Plaintiff's Supervisor.

142.    Prior to filing his EEO complaint, Plaintiff had received seven straight years of positive evaluations.

143.    After filing his EEO complaint, Plaintiff received a negative evaluation from the Defendant.

144.    Plaintiff's evaluations had no negative comments but was negative in nature.

145.    Plaintiff's negative evaluation was in retaliation of Plaintiff's filing of an EEO complaint against the defendant and Plaintiff's Supervisor.

13

146.     Therefore Plaintiff therefore requests a rescission of his evaluation, liquidated damages; compensatory damages; court costs and interests, attorney's fees; and punitive damages in the amount of $200,000.

WHEREFORE, Plaintiff requests that this Court:

    A) Find Defendant liable for breach of contract, fraud and misrepresentation;

    B) Award Plaintiff:

        a.   Compensatory Damages to be determined at the time of trial;

        b.   Liquidated Damages to be determined at the time of trial;

        c.   Court Costs and Fees; and

        d.   Reasonable attorney's fees.

    C) Award punitive damages in the amount of $565,000.

    D) Any other relief this court deems fit and proper.

Respectfully submitted,

BY:/s/ *Dipo Akin-Deko*
Dipo Akin-Deko, Bar #: 983020
Akin-Deko Professional Services Firm PLLC
6551 Loisdale Court Suite 750
Springfield, VA 22153
(703) 566-6145

# UNITED STATES DISTRICT COURT
## DISTRICT OF COUMBIA
### CIVIL DIVISION

| | |
|---|---|
| **Matthew Rogers**<br>**2803 Captains Cove Ct**<br>**Edgewater, MD 21040**<br><br>     **Plaintiff**<br><br>**v.**<br><br>**Smithsonian Institution**<br>**Capital Gallery, Suite 4100**<br>**600 Maryland Ave, S.W. MRC 504**<br>**Washington DC 20013-7012**<br><br>     **And**<br><br>**David J Skorton,**<br>**Secretary of the Smithsonian Institute**<br>**Capital Gallery, Suite 4100**<br>**600 Maryland Ave, S.W. MRC 504**<br>**Washington DC 20013-7012**<br><br><br>     **Defendant** | CASE: 1:17-cv-759 |

## JURY DEMAND

Plaintiff herein hereby demands trial by jury on all issues as a matter of law.  Respectfully

submitted,


Respectfully submitted,

BY:/s/ Dipo Akin-Deko
Dipo Akin-Deko
Bar #: 983020
Akin-Deko Professional Services Firm PLLC
6551 Loisdale Court Suite 750
Springfield, VA 22153
(703) 566-6145